UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
J&J SPORTS PRODUCTIONS, INC.,

                        Plaintiff,

        - v -

CALCIO AND AMICI, INC., d/b/a
STILLWELL SOCCER SPORTS and
SALVATORE BADALAMENTI,

                    Defendants.
----------------------------------------------------------x

**REPORT AND RECOMMENDATION**

CV 09-1862 (DLI)(VVP)

**POHORELSKY, U.S. Magistrate Judge:**

The Honorable Dora L. Irizarry referred this matter to me for a report and

recommendation regarding the default of the defendants Calcio and Amici, Inc., (hereafter

"Calcio"), and Salvatore Badalamenti (hereafter "Badalamenti"), and the amount of damages and

attorney's fees, if any, to be awarded to the plaintiff, J&J Sports Productions, Inc. (hereafter

"J&J"), as against the defaulting defendants.  This case involves the defendants' unauthorized

interception, reception, and publication of the plaintiff's closed-circuit telecast of a boxing match

between Oscar de la Hoya and Floyd Mayweather (hereafter "the Fight") on May 5, 2007, in

violation of the Cable Communications Policy Act of 1984 (hereafter the "Cable Act"), 47

U.S.C. §§ 553 and 605.

    1.      **Entry of Default Judgment**

It is well established that a party is not entitled to a default judgment as a matter of right;

rather the entry of a default judgment is entrusted to the sound judicial discretion of the court."

*Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001),

*quoting Shah v. N.Y. State Department of Civil Services,* 168 F.3d 610, 615 (2d Cir. 1999)

(internal quotations omitted).  When deciding whether to enter default the court considers various factors, including (1) the amount of money involved; (2) whether issues of fact or of substantial public importance are at stake; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay; (5) whether the grounds for default are clearly established; (6) whether the default was caused by a good-faith mistake or excusable neglect; (7) how harsh an effect default would have; and (8) whether the court believes it later would be obligated to set aside the default on defendant's motion.  *Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d at 281 *citing* Moore's Federal Practice § 55.20{2}{b} (3d ed. 1999).  In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default.  *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984).

The plaintiff has filed affidavits of a licensed process server attesting to service of the summons and complaint in this action on the defendants in accordance with the provisions of Section 308(2) and Section 311(a)(1) of the New York Civil Practice Law and Rules.  Each method of service is authorized by Rule 4 (c)(1) of the Federal Rules of Civil Procedure.  The defendants have failed to interpose an answer, or otherwise respond to the complaint.  Nor have the defendants responded to plaintiff's application for default.  The grounds for default are therefore clearly established, and there are no grounds for believing the defaults are based on a good-faith mistake or technicality.  *See Cablevision Systems New York City Corporation v. Leach*, No. 01 Civ. 9515, 2002 WL 1751343, at *2 (S.D.N.Y. July 26, 2002) (default willful where defendant never responded to complaint, appeared or explained default).  Finally, based on the defendants' inaction, it is unlikely that the court will be compelled at some future date to

enter an order vacating the default judgments. Judgment by default should therefore be granted so long as liability and damages are appropriately established.

## 2. Liability

Given the defaults, the well-pleaded allegations of the complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The allegations of the complaint thus establish the following facts leading to liability. The plaintiff concluded a license agreement to exhibit, via closed-circuit television, the May 5, 2007 boxing match between Oscar de la Hoya and Floyd Mayweather. *See* Complaint ¶ 8. The plaintiff paid "substantial fees" for the exclusive right to disseminate the Fight in order that it could be shown at various closed-circuit locations that entered into agreements with, and paid the requisite fees to, J&J. *See id.* ¶¶ 8-9. The fight was transmitted in an electronically coded or "scrambled" format, which, upon payment of the fee to J&J, could be decoded with equipment that J&J provided. *See id.* ¶¶ 12, 14. The complaint alleges[1] that the defendants willfully and unlawfully intercepted and received the signal of the Fight, and then exhibited it to its patrons in the hopes of gaining commercial advantage, specifically the patronage of customers who would otherwise have been able to view the Fight only at a properly authorized commercial establishment for a cover charge. *See id.* ¶¶

---

[1] Typically, in cases such as this, plaintiff employs auditors or investigators to visit locations suspected of illegally pirating the plaintiffs' signal during the telecast in order to verify whether the event is being exhibited, and to note the particular circumstances of the exhibition and the characteristics of the venue. The complaint does not allude to such a practice in this case, but this omission is not fatal to the plaintiff's claims inasmuch as the complaint adequately alleges the defendants' violations.

15-19.  The defendants neither purchased the Fight for exhibition nor entered into a contractual agreement with J&J.  *See id.* ¶ 13.

The plaintiff alleges violations of both 47 U.S.C. §§ 553 and 605 on the part of Calcio and Mr. Badalamenti.  *See* Complaint ¶¶ 23, 30.  Although these sections overlap, there are meaningful distinctions between the two.  Whereas section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication.  *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132-133 (2d Cir. 1996).  Although the plaintiff has established violations of Section 605, it has not established any violations of Section 553.

Although the pleadings do not clearly state that the event originated as a satellite signal, which is considered a radio communication under Title 47, *see Int'l Cablevision, Inc. v. Sykes*, 97 F. 2d 998, 1008 (2d Cir. 1993) (quoting 130 Cong. Rec. 31,874, *reprinted in* 1984 U.S.C.C.A.N. 4746), they do assert that the defendants could not have intercepted the event without "electronic decoding equipment and satellite coordinates necessary to receive the signal of the Event."  *See* Complaint ¶¶ 12-14.  The reference to satellite signals provides a sufficient basis to infer that the Fight originated with a radio transmission such that the defendants' interceptions  violated section 605.  *See Kingvision Pay-Per-View, Ltd. Corp. v. Jasper Grocery*, 152 F. Supp. 2d 438, 440-41 (S.D.N.Y. 2001).  The complaint, however, fails to assert that the communication was "offered over a cable system" which is a prerequisite for liability under section 553.  *See* 47 U.S.C. § 553(a)(1).

J&J asserts liability against both the corporate defendant and Salvatore Badalamenti, individually, who is alleged to be the owner of Calcio and Amici, Inc. *See* Complaint. ¶ 6. This, however, constitutes the entire extent of the allegations against Mr. Badalamenti individually. Individual liability under the Cable Act requires that the individual authorize the underlying violations. *See J&J Sports Productions, Inc. v. Benson*, No. 06-CV-1119, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007). Put differently, the complaint must establish that the individual had a "right and ability to supervise" the violations, as well as an obvious and direct financial interest in the misconduct. *Softel, Inc., v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997). The complaint here makes no such allegations. In such circumstances, it would not be appropriate to hold an individual jointly and severally liable along with the business entity. *See generally J&J Sports Productions v. Daley*, No. 06-CV-238, (E.D.N.Y. Feb. 15, 2007) (discussing and applying the legal bases for imposing individual liability in cable theft cases). In *Daley*, the plaintiff made even more extensive allegations of control and supervision on the part of the individual owner than in the instant case, but the court nevertheless declined to extend individual liability to the defendant. *Id.* (declining to impose individual liability in spite of conclusory allegations in complaint that individual had "supervisory control over the infringing activities"); *contra Garden City Boxing Club v. Extasis Corp.*, No. 07-CV-3853, 2008 WL 3049905, at *8 (E.D.N.Y. Aug. 1, 2008) (extending liability against individual defendant for similar factual allegations). Here, the plaintiff has made no allegation that Mr. Badalamenti was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it. Liability therefore should not be imposed on Mr.

Badalamenti individually, and the court will assess damages for violating section 605 only as against the corporate defendant Calcio.

### 3. Damages

On the issue of damages, in contrast to liability, the court may not accept the allegations of the complaint as true, but rather must make an independent determination of the appropriate relief to be awarded. *See, e.g., Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999); *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975). The court need not hold an evidentiary hearing, however, and here the court has received submissions in lieu of holding an evidentiary hearing on damages issues. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d. Cir.1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993). As no party has objected to that procedure, the court has considered affidavits submitted by the plaintiff, and concludes that they provide a basis for awarding the damages recommended below.

Under section 605, the Court may award either actual damages or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i). As the plaintiff's submissions contain no information concerning actual damages, the court considers the amount of statutory damages to be awarded. Under section 605, the plaintiff is entitled to an award of statutory damages in an amount "as the court considers just" between $1,000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Upon proof that a

violation was committed willfully and for commercial advantage or private financial gain, the award may be increased by up to $100,000. *Id.* § 605(e)(3)(C)(ii). Full costs, including reasonable attorney's fees, may also be granted. 47 U.S.C. § 605 (e)(3)(B)(iii).

Section 605 vests the court with broad discretion in determining statutory damages. Courts in this Circuit have used essentially two approaches in exercising that discretion. *See Time-Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999). The first calculates damages on the basis of the number of patrons observed in the defendant establishment, and then multiplies that figure by a set amount. *See, e.g.*, *Taco Rapido*, 988 F. Supp. at 111 (awarding plaintiff $50 for each patron). This approach seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. *See J &J Sports Productions, Inc. v. Meyers*, No. 06-CV-5431, 2007 WL 2030288, at *4 (S.D.N.Y. July 16, 2007). A slight variation to this approach awards the plaintiff the license fee the defendant, based on its capacity, would have paid if it had legally purchased the event for exhibition. *See Benson*, 2007 WL 951872, at *5 (awarding $1,200.00 as the license fee defendant, based on capacity, would have paid to the plaintiff); *Garden City Boxing Club, Inc. v. Rosado*, No. 05-CV- 1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005). The second approach employed in this Circuit makes an award of a flat sum per violation. *See Kingvision Pay-Per-View Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001).

The plaintiff has not provided the court with any evidence whatsoever upon which to base an award of statutory damages, but rather simply requests $20,000 and interest at the rate of 9%. *See* Affirmation in Support of Default Judgment ¶ 6. The plaintiff's request for damages is

not supported by any affidavits of individuals, such as an investigator or an officer of the company, with knowledge of facts on which to approximate the defendant's profits, or the plaintiff's lost earnings. Nor is there any information upon which to base a finding of willfulness and commercial advantage or private financial gain. Without such information, the court does not have a meaningful basis on which to make an award greater than the statutory minimum of $1,000.

### 4.       Attorney's Fees and Costs

Although section 605(e) allows a prevailing plaintiff to recover reasonable attorney's fees and costs, *see* 47 U.S.C. § 605(e)(3)(B)(iii), the plaintiff here only seeks costs. *See* Attorney's Affidavit of Costs and Fees ¶ 3. The plaintiff has submitted an affidavit by its attorney requesting recovery of its filing fee, $350.00, and costs for its process server in the amount of $120.00. *Id*. Although no evidence was submitted to substantiate the costs for service of process, affidavits of service were filed reflecting service on both the individual and corporate defendant by a licensed process server, and the reimbursement requested is well within the norm. The court therefore recommends that the plaintiff be awarded $120.00 in costs for service of process as well as its filing fees of $350.00.

CONCLUSION

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that statutory damages in the amount of $1,000.00, and fees and costs in the amount of $470.00, be awarded in favor of the plaintiff and against the defendant Calcio and Amici, Inc., and that no award be made as against the defendant Salvatore Badalamenti.

*          *          *          *          *          *

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendants by regular mail and file proof of such service in the record.**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:    Brooklyn, New York
          January 21, 2010